**NATIONAL LABOR RELATIONS BOARD
v. ATHENS MFG. CO.
No. 11852.**

Circuit Court of Appeals, Fifth Circuit.

May 7, 1947.

Rehearing Denied June 27, 1947.

WALLER, Circuit Judge, dissenting in part.

Gerhard P. Van Arkel, General Counsel, N.L.R.B., and A. Norman Somers, Asst. General Counsel, N.L.R.B., both of Washington, D. C., and Paul E. Kuelthau, Regional Atty., N.L.R.B., of Atlanta, Ga., for petitioner.

Murphey Candler, Jr., of Decatur, Ga., and Abit Nix, of Athens, Ga., for respondent.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

PER CURIAM.

The National Labor Relations Board found that the respondent had failed to bargain collectively in good faith with the Union and that this had resulted in a strike of respondent's employees on August 29, 1945.

The record leaves in no doubt that respondent was definitely opposed to granting certain demands the Union considered essential in an agreement, and that just as definitely the Union was determined to enforce these demands. If the record showed only this, that is, that respondent was as persistent in standing by what it considered essential in a fair agreement as the Union was in standing to its insistence on what it considered essential, we should, of course, be obliged to hold that this evidence would not support a finding that respondent had refused to bargain collectively. But this is not all that the record shows. There is substantial evidence in it that respondent's management was hostile to the Union and that it did not bargain in good faith. We cannot say, therefore, that the findings of the Board as to the Respondent's refusal to bargain collectively in good faith are without substantial support. Indeed, we are of the opinion that the evidence well supports the Board's finding that the Respondent was giving the Union a runaround while purporting to be meeting with the Union for the purpose of collective bargaining. As to this having been the cause of the strike, the Board said:

"We agree with the Trial Examiner that 'as an immediate result of this rejection [of the Union's offer before the National War Labor Board] and of the respondent's unfair labor practices, the respondent's employees struck' on August 29, 1945. We further find that the respondent's unfair labor practices were the fundamental cause of the strike which began on August 29, 1945, and of its prolongation thereafter."

We do not deem that the foregoing statement is a finding by the Board that the refusal of the Company to accept the

War Labor Board as an arbitrator was the cause of the strike. Such a finding would be without substantial support. The strike vote had been taken on August 8, or before the meeting with the War Labor Board on August 23. It was not an unfair labor practice for the Company to refuse to accept the National War Labor Board as an arbitrator. At most it could only be considered as a circumstance bearing on the question as to whether or not the respondent was refusing to bargain collectively in good faith. There is no law requiring the acceptance of the War Labor Board as an arbitrator.

Besides, the fact that the War Labor Board had previously issued a directive to the Company wherein the Company had been directed to observe maintenance of membership and check-off and for arbitration of certain specified matters clearly suggests why the Union proposed the War Labor Board as the arbitrator and why the respondent refused to accept it as such. It had already expressed itself in favor of the Union and against the position of the Company.

But the petitioner did not base its findings of unfair practices or its order for their remedy on respondent's refusal to accept the War Labor Board as arbitrator. It found, and the record supports the finding, that the respondent's unfair labor practices were the fundamental cause of the strike and the reasons for the remedial orders based on the finding.

A decree directing enforcement of the Board's order may be presented for entry with the qualifications upon provisions 2(c) and (f) of the order that the applications provided for therein must be made within a reasonable time from the entry of this decree.

WALLER, Circuit Judge (concurring in part and dissenting in part).

I agree that there is substantial evidence in the record that the management of the respondent was hostile to the Union, and that it did not bargain in good faith. Definitely it was opposed to certain demands of the Union, and just as definitely the Union was determined to enforce these demands, but I do not agree that the evidence could sustain a finding that it was the respondent's refusal of a bona fide offer to bargain collectively that caused the strike.

After the Union had taken a strike vote on August 8, it made a further proposal for collective bargaining before the War Labor Board on August 23. At this meeting Mr. Douty, counsel for the Union, proposed further bargaining with the respondent for a fixed period of time, upon condition that "at the end of a period of honest and open and full negotiations we might refer the matter back to the Board [War Labor Board] on any issue in dispute that would arise and that the decision of the Board would be binding on both parties."

The respondent was then in a hearing before the War Labor Board on a rule to show cause why it had not theretofore complied with a directive issued by the War Labor Board ordering respondent to do substantially the same things the Union was demanding. It is quite reasonable that the respondent did not agree to resume collective bargaining upon the condition that if an agreement were not reached there should be an arbitrator to settle the matter who had already decided the issues against the respondent's contentions. The Company, after being allowed a few days to think the proposal over, refused the offer by telegram of August 28. The next day the strike ensued.

The statement by the Board, quoted in the majority opinion, apparently places much significance on this feature of the evidence. It says that the strike was the immediate result of the rejection of the Union offer before the War Labor Board and of the unfair labor practices of respondent. I agree with the majority that the refusal of the respondent to accept the War Labor Board as arbitrator, in the event of the failure of further collective bargaining, was not an illegal refusal to bargain collectively nor an unfair labor practice. I doubt if it should even be considered as a relevant circumstance.

The Board stated also: "We further find that the respondent's unfair labor practices were the fundamental cause of the strike,"

etc., but the only unfair labor practice adjudged by the Board was the refusal to bargain collectively, while the evidence shows beyond doubt that it was the refusal of the Company to grant the Union's demands that caused the strike and not the failure to bargain collectively.

The members of the Union had already voted to strike before the conditional proposal was made, and its rejection of that proposition could hardly be. said to have caused the strike. It was merely another indication that the Company did not intend to grant the Union's demands. The employees desired union security; they desired a check-off of dues; they desired vacations with pay; and they desired certain arbitration- clauses put into a definite contract; and after months of effort to secure the same, and after the Company's failure to comply with the War Labor Board directive to grant these things, and none of their demands in respect to these things had been agreed to, other than vacations with pay, they struck.

I do not believe, and the majority does not hold, that it is given to the National Labor Relations Board, or to the Court, to say what the contract or agreement between the employer and the Union ought to have been, or to adjudge that the failure to maintain the check-off of dues, union security, vacation-with-pay, and arbitration clauses are unfair labor practices. These things, under present legislation, are matters of negotiation and agreement between the parties, concerning which either party had a legal right to be adamant or contrary, and for the attainment of these objectives the Union had a legal right to strike.

Since under the law neither the Board, nor the Court, is authorized to determine what the contract between the respondent and the Union should provide, it seems necessarily to follow that neither the Board nor this Court has a right to impose sanctions upon the respondent for refusing to agree to the demands of the Union as to the things which should have been put in the contract. Whether the Union was justified in striking or whether the respondent was justified in refusing to agree to the Union's demands are not justiciable issues here. In the absence of a right to decide the question we should only refer it back to the instrumentality of collective bargaining which we can, and should, order to be undertaken in good faith.

Believing that the evidence shows beyond dispute that the strike was called solely to enforce the demands of the Union, and that neither the Board nor the Court is authorized under the statute to pass upon the merits or demerits of the strike, I would hold that that part of the Board's order contained in "The Remedy", and brought forward into the order, requiring the reinstatement of former employees without loss of seniority and other rights and privileges, and to dismiss "if necessary, all the persons hired on or after August 29, 1945, the date of the commencement of the strike, and not in respondent's employ on said date" was an adjudication by the Board and is now one by this Court on the merits of the strike and, in effect, holds that the strikers were right in making the demands, and that the Company was wrong in not acceding to them.

I, therefore would enforce only the provisions of the Board's order that the respondent cease and desist: (a) from refusing to bargain collectively with the Union; (b) from threatening to shut down its mill before bargaining with the Union; (c) from interfering with the efforts of the Union to bargain collectively with it; (d) that it bargain collectively with the Union on request; (e) that it post immediately in conspicuous places in its Athens, Georgia, plant appropriate notices; and (h) that it duly notify the Regional Director within ten days as to the steps taken to comply with such an order.